_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

**Entered on Docket**
**December 21, 2012**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

| | | |
|---|---|---|
| In re | ) | BK-S-11-28575-MKN |
| | ) | Chapter 7 |
| RYAN MITCHELL, | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ALEC BUNTING, by and through his | ) | Adv. Proceeding No.: 12-01050-MKN |
| guardian ad litem, STELLA RAVELLA, and | ) | |
| STELLA RAVELLA, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Date: September 6, 2012 |
| RYAN MITCHELL, | ) | Time: 10:00 a.m. |
| Defendant. | ) | |
| _____ | ) | |

**ORDER ON RENEWED MOTION TO DISMISS COMPLAINT**
**OBJECTING TO DISCHARGEABILITY OF INDEBTEDNESS (11 U.S.C. §523)**[1]

The matter was heard on September 6, 2012. The appearances of counsel were noted on the record. At the conclusion of the hearing, the court took the matter under submission.

---

[1] In this Order, all references to "Section" shall be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, unless otherwise indicated. All references to "FRCP" shall be to the Federal Rules of Civil Procedure. All references to "FRBP" or "Rule" shall be to the Federal Rules of Bankruptcy Procedure.

1

Debtor Ryan Mitchell filed for Chapter 7 bankruptcy on November 30, 2011.[2] On March 6, 2012, Plaintiffs Alec Bunting ("Bunting"), a minor, and his mother, Stella Ravella ("Ms. Ravella"), filed an adversary complaint ("Original Complaint") against Debtor, based on a tonsillectomy procedure performed by the Debtor on Bunting.[3] Their complaint alleged the following causes of action: nondischargeability under Section 523(a)(6), intentional infliction of emotion distress, breach of implied covenant of good faith and fair dealing and fiduciary duty, fraud, and misrepresentation.

On April 9, 2012, Debtor filed a Motion to Dismiss ("First MTD") that was heard on May 16, 2012. That motion was granted with leave to amend.

On June 29, 2012, Plaintiffs filed their Amended Complaint, asserting a single cause of action: nondischargeability of a debt pursuant to Section 523(a)(6). Debtor is alleged to have improperly injected a drug in Bunting while performing surgery, which caused him to suffer an AV heart block. In addition, it is alleged that Bunting was hospitalized for the heart block, had a pace maker implanted and will suffer from a heart condition for the rest of his potentially shortened life. Ms. Ravella apparently observed the surgery and subsequent medical emergency involving her son, and suffered severe emotional distress. Plaintiffs further allege that Debtor was addicted to drugs which "compromised his abilities at the time of the subject procedure." Debtor also apparently knew that he was chronically impaired while operating, made a conscious decision to perform the surgery anyway, "was aware of the probable dangerous consequences of his conduct and willfully and deliberately failed to avoid those consequences."

On July 6, 2012, Debtor filed a Renewed Motion to Dismiss Complaint Objecting to Dischargeability of Indebtedness (11 U.SC. §523) ("Renewed MTD"). Plaintiffs filed

---

[2] Debtor received a discharge on March 7, 2012 but the case has not yet closed.

[3] Prior to filing the Original Complaint, Plaintiffs filed suit against Debtor in state court regarding the same events..

2

1   opposition and Debtor filed two replies.  The motion was heard on September 6, 2012.[4]

2         Although not specifically referenced in the Renewed MTD, the court assumes that the

3   Debtor seeks dismissal under FRCP 12(b)(6), just as he did in his First MTD.  FRCP 12(b)(6),

4   which is incorporated by FRBP 7012, requires dismissal of a cause of action when the plaintiff

5   fails to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a

6   complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

7   is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009),

8   citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (quotations omitted).  In

9   considering a FRCP 12(b)(6) motion, the court accepts as true all factual allegations made by

10  the plaintiff and draws all reasonable inferences in favor of the plaintiff.  See Barnes v. Belice

11  (In re Belice), 461 B.R. 564, 573 (B.A.P. 9th Cir. 2011).  Dismissal is appropriate if there is "a

12  lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

13  legal theory."  Id. (citation and quotations omitted).  The critical inquiry under either basis is

14  whether the allegations in the complaint are well-plead; while the complaint need not contain

15  "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

16  relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

17  cause of action . . . ."  Id., citing Twombly, 550 U.S. at 555 (quotations omitted).  As such, a

18  claim is facially plausible if there is factual content sufficient for "the court to draw the

19  reasonable inference that the defendant is liable for the misconduct alleged . . . ."  Id., citing

20  Iqbal, 129 S.Ct. at 1949.

21        Section 523(a)(6) prohibits a debtor from obtaining a discharge of a debt for "willful and

22  malicious injury by the debtor to another . . ."  11 U.S.C. § 523(a)(6).  "A debtor willfully

23  injures another if he subjectively intends to injure him, or subjectively believes that harm is

---

[4] A pretrial conference and a trial in this matter were scheduled for January 3, 2013 and January 14, 2013, respectively.  Both dates were vacated by the court.

3

substantially certain to occur." Smith v. Entrepreneur Media, Inc. (In re Smith), No. EC-009-117-MKMoJu, 2009 WL 7809005 *7 (B.A.P. 9th Cir. Dec. 17, 2009), citing Carrillo v. Su (In re Su), 290 F.3d 1140, 1143-45 (9th Cir. 2002). "An injury is malicious if it involves (1) a wrongful act, (1) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Id., citing Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (quotations omitted).

Reckless or negligent conduct that results in injury does not satisfy the "willful" element of Section 523(a)(6). See Kawaauhau v. Geiger, 118 S.Ct. 974, 975-76 (1998). In Geiger, the debtor was a doctor who committed medical malpractice when he intentionally chose to give substandard care by providing less expensive, but less effective, medication to his patient. Id. at 976-77. The debtor knew that his care was medically deficient. Id. at 977. The Supreme Court affirmed the finding that the injury was not willful within the meaning of Section 523(a)(6) because, although the debtor intended to give inadequate care, he did not deliberately or intentionally injure the patient. Id. at 978. It indicated that to be willful, the injury itself must be intentional, and not be merely the result of an intentional act. Id. at 977.

The willfulness element therefore is evaluated under a subjective standard, requiring a determination that the debtor actually intended to cause injury or actually knew that injury was substantially certain to occur. See In re Su, 290 F.3d 1140, 1142. In Su, the debtor was found liable in state court for negligence and malice when he sped through a red light at a busy intersection, striking the plaintiff. Id. at 1141. In a subsequent nondischargeability proceeding, the bankruptcy court's finding that the debt was nondischargeable was reversed because the court relied on an objective standard for willfulness. Id. at 1142. The Ninth Circuit noted that "it is highly unlikely that Su was subjectively certain that harm would result, for if he were, he most likely would not have run the light and thrown both his life and others into certain peril . . . . Rather, Su likely performed a maneuver that carried with it a very high degree of risk, but one that he hoped could be navigated safely." Id. at 1145 n. 4 (citations and emphasis omitted).

However, the court does not have to take a debtor at his word as to his state of mind, and "may consider circumstantial evidence to establish what the debtor must have actually known when taking the injury-producing action." Id. at 1146 n. 6.

Although it is a close question, there are sufficient facts alleged in the Amended Complaint to infer that the Debtor knew injury to Plaintiffs was substantially certain to occur when he performed surgery while impaired.[5] Similar to Geiger, this is a medical malpractice case where a doctor is being accused of intentionally providing substandard care to his patient. Also like the doctor in Geiger, Debtor is accused of knowing he was providing insufficient care to Bunting. However, in this case, Plaintiffs are alleging more than simply that Debtor's intentional act caused injury, as was found to be insufficient for purposes of willfulness in Geiger. Instead, Plaintiffs also claim that the Debtor knew that injury was substantially certain to occur during the operation on Bunting. They assert that Debtor knew he had a drug problem, knew he was chronically impaired at the time he performed surgery, and knew the probable consequences of his conduct, i.e., injury to Plaintiffs. Moreover, it is plausible that Debtor knew that his impairment from drugs would affect his medical judgment and/or surgical skills such that injury was substantially certain occur to Bunting during the procedure. These facts, if proven at trial, provide a basis to find Debtor's willfulness because they support a mental state beyond recklessness or negligence.

Based on Su, it is not enough to prove that a reasonable person in Debtor's place would have been substantially certain that Plaintiffs would be injured when Debtor performed surgery while impaired. See Su, 290 F.3d 1140, 1145 n. 4. Debtor must have proceeded to act even knowing of the facts surrounding the risk. Id. Here, the Debtor allegedly knew of the high risk injury to the Plaintiffs and proceeded with the procedure anyway, unlike the debtor in Su, who

---

[5] In the Amended Complaint, Plaintiffs appear to be asserting that Debtor knew injury was substantially certain to occur because of his conduct, not that he intended to injure them.

likely believed or hoped that he could safely navigate a highly dangerous situation. In this case, Debtor would not have been similarly deterred by the risk of physical injury to himself. Based on Debtor's alleged knowledge of his drug addiction, impairment and the substantial certainty of Plaintiffs injuries,[6] which must be accepted as true, there is a plausible basis to find that injury to Plaintiffs was willfully inflicted by Debtor.[7]

As to the malicious element of Section 523(a)(6), Plaintiffs likewise have alleged sufficient facts to support a plausible claim. The intentional wrongful act, as alleged, is Debtor's operation on Bunting while impaired. Bunting and Ms. Ravella were allegedly injured by Debtor's acts. Finally, there is no indication of just cause or excuse for Debtor's actions.

Based on the foregoing, Plaintiffs have sufficiently pleaded both the willful and malicious elements of 523(a)(6).[8]

**IT IS THEREFORE ORDERED** that Debtor's Renewed Motion to Dismiss

---

[6] In their Opposition, Plaintiffs state that they plan to rely on circumstantial evidence, i.e., Debtor's medical records, to demonstrate the requisite mental state, as allowed in the Ninth Circuit. See Su, 290 F.3d at 1145 n. 6. Debtor's dispute regarding Plaintiffs' ability to obtain the records is not before the court at this time.

[7] In one of his replies, Debtor sought to bring attention to testimony and a report that ostensibly contradicts the assertions in the Amended Complaint that Debtor was impaired at the time of the operation on Bunting. Consideration of such evidence outside of the pleadings is improper on a motion to dismiss.

[8] During oral argument, Plaintiffs' counsel asserted that Plaintiffs also have nondischargeable claims for fraud under Section 523(a)(2) and for breach of fiduciary duty under Section 523(a)(4). As to Plaintiffs' purported 523(a)(2)(A) and 523(a)(4) claims, those actions are not before this court at this time because Plaintiffs have not plead them. However, as expressed at the hearing, the court is skeptical about the viability of a 523(a)(4) action based on the common law fiduciary relationship between a doctor and patient. See Lee-Benner v. Gergely (In re Gergely), 110 F.3d 1448, 1450-51 (9th Cir. 1997): "The meaning of 'fiduciary' in § 523(a)(4) is an issue of federal law... The broad, general definition of fiduciary—a relationship involving confidence, trust, and good faith—is inapplicable... The section applies only if an express trust pre-existed the debt... No such express trust arises out of the doctor-patient relationship." (Citations and quotations omitted). In addition, although discussed by Debtor in its Renewed MTD, Plaintiffs do not request punitive damages in their Amended Complaint, therefore, that issue is not before the court at this time.

1  Complaint Objecting to Dischargeability of Indebtedness (11 U.S.C. §523), Adversary Docket
2  No. 22, be, and the same hereby is, **DENIED**.
3      **IT IS FURTHER ORDERED** that counsel for both parties are to confer and contact
4  the courtroom deputy, Benji Rawling, to obtain new pretrial conference and trial dates for this
5  matter.  If counsel fail to arrange new pretrial and trial dates within thirty days after entry of this
6  order, the court will set a scheduling conference at which both counsel are required to appear.
7
8  Copies noticed through ECF to:
9      MARIE ELLERTON    marie@memlaw.net, annicca@memlaw.net
10     AMBRISH S. SIDHU    ecfnotices@sidhulawfirm.com
11
12                                           ###